# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES,

      Plaintiff,

                                    Case No. 1:17-CR-03246-MV-3

      v.

CAMARA CHERRY-AMOS,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Supplemental Memorandum Regarding Reimposition of Supervised Release ("Objection") [Doc. 792], in which Ms. Camara Cherry-Amos objects to the imposition of a five-year term of supervised release as part of her sentence for having violated the conditions of her prior term of supervised release. The Court, having considered the Objection, briefs, and relevant law, and being otherwise fully informed, finds that the Objection is not well-taken and will be overruled.

## BACKGROUND

On November 19, 2019, Camara Cherry-Amos pleaded guilty to Conspiracy to Commit Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1594(c), pursuant to a Rule 11(c)(1)(C) plea agreement ("Plea Agreement"). Doc. 273. At sentencing on October 19, 2021, this Court accepted the Plea Agreement and thus became bound by the specific sentencing range stipulated therein, which was 36-84 months of imprisonment followed by five years of supervised release. Doc. 273; Doc. 478. The statutory maximum term of supervised release would otherwise have

been life. 18 U.S.C. § 3583(k). This Court imposed a sentence of 40 months followed by five years of supervised release. Doc. 479.

In the more than four years since, Ms. Cherry-Amos has had her supervised release revoked three times. Each time, she was sentenced to a new term of imprisonment and a new term of supervised release. First, on May 26, 2022, she was sentenced to a term of imprisonment of time served (97 days) followed by five years of supervised release. Doc. 602; Doc. 792. Next, on January 4, 2023, she was sentenced to a six-month term of imprisonment followed by a five-year term of supervised release. Doc. 766. Most recently, on February 13, 2026, following a series of violations of the conditions of her supervised release related to drug and alcohol use, use of unauthorized devices, unauthorized communication with felons, and unauthorized contact with minors, this Court once again revoked Ms. Cherry-Amos's supervised release and imposed six months of imprisonment followed by five years of supervised release. Doc. 787; Doc. 791. The violations at issue were part of a pattern of behavior that Probation described as "manipulating the conditions of her supervision to her convenience, which is later discovered during polygraph testing." Doc. 787 at 1. Probation noted that Ms. Cherry-Amos "continues to struggle with basic expectations" despite the fact that "[n]umerous efforts have been made to assist [her] with achieving long-term success." *Id.* at 2.

During sentencing for this most recent revocation, defense counsel orally objected to the Court's imposition of a new five-year term of supervised release. Specifically, defense counsel argued that any new term of supervised release must be for a shorter duration, since the five-year term of supervised release stipulated in the accepted Plea Agreement effectively replaces the otherwise applicable statutory maximum for purposes of calculating the maximum allowable term of supervised release using the formula in 18 U.S.C. § 3583(h). Doc. 791. The Court requested

supplemental briefing on the issue, with a deadline of February 20, 2026. *Id.* Defense counsel filed a brief on February 19, 2026, and the Government responded in opposition on February 25, 2026. Doc. 792; Doc. 794.

## DISCUSSION

In her Objection, Ms. Cherry-Amos argues that, although the statutory maximum term of supervised release for her underlying sex offense is life, as set forth in 18 U.S.C. § 3583(k), the five-year term of supervised release negotiated in the Plea Agreement should be treated as the maximum that cannot be exceeded. Doc. 792. According to Ms. Cherry-Amos, while "§ 3583(k) authorizes a term of supervised release of five years to life, that statutory ceiling does not override the binding effect of a Rule 11(c)(1)(C) plea agreement once accepted by the Court, that provides for a different supervised release term." *Id.* at 2. She contends that the "negotiated five-year term was not advisory, it was the specific supervisory component of the agreed sentence and it cannot be now read to mean 'up to life' just because that is the statutory maximum when it clearly agreed to only five years." *Id.* at 2-3. Thus, she argues, the Court can impose a term of supervised release no greater than the five-year Plea Agreement maximum less the duration of the three terms of imprisonment that the Court imposed as a result of the three revocations of her release (97 days, six months, and six months, respectively). *Id.* at 4. She calculates this to be a maximum term of 45.4 months. *Id.* The Government disagrees, contending instead that supervised release may be imposed "up to life" without running afoul of the Plea Agreement, because the language of the Plea Agreement applied only to the "original sentence," and the Court retains the authority to "impose a term of supervised release upon revocation of supervised release." Doc. 794 at 2. As set forth herein, the Court finds Ms. Cherry-Amos's arguments unavailing and agrees with the

3

Government that imposition of a new five-year term of supervision upon Ms. Cherry-Amos's most recent supervisory violations is legally valid and does not violate the Plea Agreement.

As noted above, the parties entered into a binding agreement pursuant to Rule 11 (c)(1)(C), which provides that a plea agreement may specify that the government will "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply," and that "such a recommendation or request binds the court once the court accepts the plea agreement." Fed. R. Crim. P. 11(c)(1)(C). Under Rule 11(c)(1)(C), the Court was bound by the parties' agreement in sentencing Ms. Cherry-Amos on her offense of conviction. The plain language of the Plea Agreement, however, does not equally bind the Court in sentencing Ms. Cherry-Amos on her most recent supervised release violation.

In the "Sentencing" Section, the Plea Agreement expressly states that Ms. Cherry-Amos "understands that the minimum and maximum penalty provided by law" for her offense are, *inter alia*, as follows: "the maximum term of imprisonment is life . . . [and] a term of supervised release of not less than five years and up to life to follow any term of imprisonment." Doc. 273 (Plea Agreement) ¶ 4(c). This paragraph goes on to state, however, that, in addition to this penalty:

> (If the Defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the Defendant's supervised release could be revoked – even on the last day of the term – and the Defendant could then be returned to another period of incarceration and **a new term of supervised release**.)

*Id.* ¶ 4(c) (emphasis added). In the "Recommendations" Section, the parties indicate that they have made an agreement "that a specific sentence of no less than 36 months and no more than 84 months' imprisonment, followed by a term of supervised release of five (5) years, is the appropriate disposition in this case." *Id.* ¶ 10(a). This agreement thus addresses two things: (1) Ms. Cherry-

Amos's term of imprisonment, bargaining from the statutory "maximum term" of life imprisonment down to a term of 36 to 84 months; and (2) her term of supervised release, bargaining from "not less than five years and up to life" down to a term of five years. This Section does not indicate any similar agreement as to what will happen if Ms. Cherry-Amos violates the conditions of her five-year term of release. Accordingly, the Recommendations Section does not modify the earlier statement in the Sentencing Section that makes clear that, if she does so violate, her supervised release could be revoked, and she could be "returned to another period of incarceration and a *new* term of supervised release." *Id.* ¶ 4(c) (emphasis added). The parameters of a new term of supervised release thus are simply not part of the bargained-for sentence to which the parties agreed.

This point is further underscored by the fact that, although, in recognition of the benefit conferred upon her by the Plea Agreement, Ms. Cherry-Amos waives her right to appeal her "conviction(s) and any sentence . . . imposed in conformity with this Rule 11(c)(1)(C) agreement . . . and any collateral attack to [her] conviction(s) and any sentence," there is *no* appeal waiver in the Plea Agreement as to any sentence that might be imposed upon revocation of her conditions of supervised release. The fact that she did not bargain away her right to appeal a new term of supervised release supports the finding that the Plea Agreement did not provide her any benefit in connection with any such future sentence.

Indeed, in *United States v. Napper*, the Fifth Circuit interpreted similar language in a Rule 11(c)(1)(C) agreement to mean that the agreement "concerned only one term of supervised release – the term imposed by the district court immediately following Napper's guilty plea." 978 F.3d 118 (5th Cir. 2020). In that case, the sentencing section of the agreement provided that the district court could statutorily impose "a term of supervised release of not more than 5 years" and that "if

5

Napper violated the conditions of supervised release, he could be imprisoned for the entire [statutorily permissible] term of supervised release." *Id.* at 123. The Court concluded that the "plain language" in this sentencing section made clear that "the words, 'a term of supervised release'" meant "the initial term of supervised release imposed by the district court for Napper's plea of guilty to the drug-trafficking crime." *Id.* The Court finds this reasoning persuasive.

Moreover, reading the Plea Agreement to apply only to the initial term of supervised release imposed by the Court, rather than to encompass any future terms of supervised release imposed after future violations, is consistent with the Tenth Circuit's interpretation of the relevant statutory provision, § 3583(h). That provision indicates that, when the court includes a requirement that the defendant be placed on a term of supervised release after imprisonment following revocation of a term of supervised release, "the length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release." 18 U.S.C. § 3583(h). Accordingly, under § 3583(h), the upper limit of a term of supervised release imposed at a revocation hearing is the otherwise applicable "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release," minus any term of incarceration imposed for previous revocations of supervised release in the same case.

The Tenth Circuit has interpreted § 3583(h) to mean that, "[u]pon revocation . . . the available supervised release term is not measured by the term initially imposed by the district court, but by the term authorized in 18 U.S.C. § 3583([k]) for the offense of conviction." *United States v. Palmer*, 380 F.3d 395, 399 (10th Cir. 2004). There is no reasoned basis to exempt from this rule cases in which there was a binding plea agreement, because the available supervised release term

upon revocation is not measured by the term initially imposed by the Court. Thus, the initial term imposed by the Court, whether pursuant to a binding plea agreement or otherwise, is simply not relevant to the Court's determination of the length of the supervisory term imposed upon revocation.

The inapplicability of the Plea Agreement to the imposition of supervised release upon revocation is also underscored by the fact that any new supervised release term is just that: a *new* term of supervision, not an extension of the original term. The Tenth Circuit made this clear in *United States v. Hill*, when it expressly rejected a defendant's challenge to his new supervised release term on the basis that it impermissibly extended the length of his original supervised release term beyond the three-year statutory maximum, an argument analogous to the one that Ms. Cherry-Amos makes here. 831 F. App'x 407 (10th Cir. 2020). The defendant "complain[ed] that he started serving his original supervised release term in June 2018 and that he [would] not finish serving his new one until more than three years after the June 2018 start date." *Id.* at 411. The Court explained that the defendant was "effectively seeking aggregation of his supervised release terms, *i.e.*, credit against the new term for the time served on supervised release under the original term. But that is not how the statute works." *Id.* The Court specifically held "that § 3583 does not require district courts to aggregate supervised release terms and [] permits courts upon revocation to restart the clock on the maximum supervised release term allowed under § 3583." *Id.* at 412; *see also United States v. Palmer*, 380 F.3d 395, 398 (8th Cir. 2004) ("[N]o statutory language indicates that new terms of supervised release are cabined by the supervised release term originally imposed."); *United States v. Lamirand*, 669 F.3d 1091, 1097 n.6 (10th Cir. 2012) (stating that § 3583(h) "was enacted to make clear that district courts are permitted to impose both imprisonment and a *new* term of supervised release upon revocation") (citation omitted) (emphasis in original). There is no

7

principled basis to carve out an exception to this holding where the defendant was originally sentenced pursuant to a binding plea agreement; the clock "restarts" after revocation, regardless of whether the original term of supervision was imposed pursuant to a binding plea agreement.

Indeed, a contrary finding would compromise this Court's ability to fashion an appropriate sentence upon revocation of supervised release. For the first time or after revocation, when deciding whether to impose a term of supervised release and, if so, for what length of time, the Court is statutorily required to consider the factors set forth in 18 U.S.C. § 3553(a). Upon a violation of supervised release, the § 3553(a) factors are, at least in part, informed by the violation itself. When deciding whether to accept a binding plea agreement, the Court cannot predict what violations, if any, a defendant may commit in the future. Accordingly, the Court cannot determine, when sentencing a defendant on an offense of conviction pursuant to a binding plea or otherwise, what an appropriate new term of supervised release would be upon revocation. Thus, it would be nonsensical, and would run afoul of statutory mandates, to interpret the Plea Agreement to apply to theoretical sentencing decisions upon potential supervision violations.

For these reasons, the Court finds that, despite the Plea Agreement's constraints on this Court's determination of Ms. Cherry-Amos's original sentence, "[t]he only limitations on the [C]ourt's sentencing authority [on the instant revocation of her term of supervision are] the maximum term of imprisonment specified in subsection (e)(3) and the subsection (h) requirement that the new term of supervised release not exceed the term authorized in subsection ([k]) for the offense of conviction minus any post revocation prison term." *Hill*, 831 F. App'x at 412. As Ms. Cherry-Amos asserts, each of the three terms of imprisonment that were imposed on her in connection with the revocations of her supervision thus must be aggregated and then subtracted from that statutory range. Specifically, those three imposed post-revocation terms of imprisonment

8

were for 97 days, six months (180 days), and six months (180 days), respectively, totaling 457 days. The five-year term of supervision to which Ms. Cherry-Amos objects does not exceed a lifetime term minus 457 days and thus is legally valid.

In reaching this decision, the Court is not unsympathetic to Ms. Cherry-Amos. While the Plea Agreement does not contain any bargained-for limitation on the length of any potential terms of supervised release following violations of her supervision, the Government nevertheless could have done a more careful and thorough job of drafting the Plea Agreement to make clear that no such bargain was being made. Moreover, it is quite possible that Ms. Cherry-Amos believed, albeit incorrectly, that she would not have to spend more than five years total on supervision. The Court reminds Ms. Cherry-Amos that, if she is successful on supervision, the Court can and will consider early termination of her supervision. It is the Court's hope that Ms. Cherry-Amos will find solace in the Court's sincerest intentions to exercise its authority to terminate supervision early if she demonstrates that she no longer needs to remain under supervision.

**CONCLUSION**

Ms. Cherry-Amos has not provided any valid basis for its Objection to the Court's imposition of a new five-year term of supervised release based on the most recent revocation of her supervision.

**IT IS THEREFORE ORDERED** that Ms. Cherry-Amos's Objection, as set forth in Defendant's Supplemental Memorandum Regarding Reimposition of Supervised Release [Doc. 792], is **OVERRULED**.

DATED this 12th day of March 2026.

_____

MARTHA VÁZQUEZ
Senior United States District Judge